[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This fully contested dissolution of marriage action was heard by the court on January 29th, April 10th and April 27, 2001. The plaintiff, whose maiden was Katherine Hesse, and the defendant were married on October 15, 1994 in New Haven, Connecticut. Both parties have resided in the state of Connecticut for a period of at least one year prior to bringing this action. The marriage has broken down irretrievably and there is no prospect for reconciliation. There is one minor child issue of the marriage, Alexandra Rose Cerrone, born July 14, 1998. The court dissolves the marriage of the parties on the grounds of irretrievable breakdown.
The plaintiff wife is thirty-three years of age and is in good health. She graduated from Pace University with a bachelor degree in marketing management. Prior to the marriage, and until June 2000, she was self-employed working in the field of direct mail marketing. The Schedule C for the plaintiff's business filed with the couple's tax returns shows net profit as follows: 1997 $15,646; 1998 $30,453; 1999 $27,729. The court concludes that the plaintiff has an earning capacity of at least CT Page 6702 $24,500.
The defendant husband is forty-seven years of age. He takes medication for high anxiety, however; this does not affect is ability to work full-time. He is a high school graduate with one year of college courses. The defendant has worked in automobile sales for many years; presently he is the general sales manager of a dealership in Fairfield. The parties have stipulated that the defendant's income is $125,000 per year. A portion of that income, $8000, was in the form of a non-cash travel bonus.
In May 1998, the marital home, located at 191 River Road, Madison, Connecticut, was purchased in the name of the plaintiff for $263,500 utilizing a mortgage in the original amount of $196,000. The balance of the purchase price, closing costs, and some improvements, were paid with a $40,000 gift to the couple from the plaintiff's uncle, $30,000 from commissions and earnings from the plaintiff's business, and $12,000 from the defendant's individual retirement account. The property was placed in the parties' joint names, and refinanced in June 1999. The new mortgage was in the amount of $251,250. The money raised from the refinance was used to pay joint indebtedness and expenses.
Sometime after the home was purchased, blasting was conducted in the vicinity of the home by a developer. This blasting caused the foundation of the home to settle which resulted in structural damage. The parties have a pending lawsuit against the entities they believe are responsible for the damage. The parties have stipulated that the marital home has a value of $325,000 in an undamaged condition. The parties have received a cost estimate of $115,000 to stabilize the house by underpinning its foundation. In addition to the cost of stabilizing the house, the parties are also making a claim for the cost of repairing the damage to the structure and for "stigma" value.
The home is presently occupied by the plaintiff and she is making reduced payments on the mortgage which do not fully pay the accruing mortgage interest, hence the balance on the mortgage has increased to $262,790 as of April 10, 2001.
In June 2000, the parties agreed that the plaintiff would establish and access a $20,000 line of credit with MBNA. There is presently a balance on that account of $19,123. The money borrowed from this account benefitted both parties.
The parties separated in July 2000. Having considered the evidence, the court declines to assess fault to either party for the break down of the marriage; they are both responsible. CT Page 6703
The parties are in dispute over custody of their child. The defendant father seeks joint legal custody and the mother seeks sole custody. The defendant has had weekly, supervised visitation with the child. After considering the evidence, and the best interest of the child, the court concludes that after the defendant and his sister meet with Scott Torquato, a licensed clinical social worker, supervised visitation is not necessary. The court has observed both the plaintiff and defendant and has listened to tape recordings of their phone conversations when they were in an agitated state. Having heard the testimony of the parties as to the behavior of the other, and having heard the level of vitriol that each is capable of, the court cannot conclude, at this time, the parties have the ability to engage in the ongoing, rational, and meaningful dialog joint custody requires. Having considered the pro-visions of C.G.S. § 46b-56 the court believes that the plaintiff should have sole custody of the minor child.
The parties are also in disagreement about the future of the marital home and the disposition of the blasting lawsuit. The plaintiff proposes that the defendant quitclaim his interest in the property to her and also assign to her his interest in the lawsuit. She proposes to be responsible for the mortgage and expenses of the property, however, in the event of sale or transfer of the property, she asks that each party be held responsible for one half of any deficiency. The defendant proposes that the property be sold in a commercially reasonable manner, and any proceeds or any deficiency be shared equally by the parties. He asks that the net recovery from the lawsuit also be shared equally.
Having considered the evidence, and the provisions of C.G.S. § 46b-81
regarding assignment of property, the court concludes that both parties should equally share any equity, deficiency, or recovery related to the house and/or lawsuit. In view of the substantial costs of "carrying" the house, and in light of the financial condition of the parties, the house should be sold as soon as reasonably possible. The court notes that the defendant has not worked since June 2000, and presently has no income other than what is provided to her by the defendant. On her financial affidavit, the plaintiff shows reduced mortgage interest payments of $390 per week and home maintenance and yard expenses in the amount of $166 per week. This housing expense for the plaintiff is beyond the means of the parties. In its orders the court has made provision for possible contingencies and it will retain jurisdiction over the issues of the sale of the house and the disposition of the litigation.
Having considered the provisions of C.G.S. § 46b-82, the court concludes a period of rehabilitative alimony for the plaintiff is appropriate. Presently, the plaintiff is unemployed and she devotes her CT Page 6704 full efforts to raising the couple's daughter who is almost three years old. When the plaintiff is engaged in her business, much of the work is done at home. The court expects that after a period of adjustment the plaintiff will be able to resume her work, build her business, and generate business income. The termination of alimony coincides with the child's entry into full day school.
The defendant presently has an insurance policy in the amount of $10,000 upon his life. The court does not have sufficient evidence before it to create a proper foundation for an order of additional insurance. See Quindazzi v. Quindazzi, 56 Conn. App. 336 (2000).
The parties have stipulated there is an arrearage on pendente lite alimony and child support in the amount of $11,700.19 as of April 30, 2001. The defendant has filed a motion to modify alimony and child support pendente lite dated February 26, 2001 and he has asked the court to take action on the motion. There is no agreement the orders were to be retroactive. The court denies the motion.
 ORDERS
1. The plaintiff shall have sole custody of the minor child.
2. The pendente lite visitation arrangements shall continue until such time as the defendant has met with Scott Torquato for one session to discuss and be advised of remedial parenting advice. The defendant accompanied by his sister, Gilda Elser, shall meet with Mr. Torquato for one session to discuss the defendant's parenting issues. After these two meetings have taken place, the defendant shall have unsupervised visitation with the minor child one weekday evening from 5 p.m. to 7 p.m. and each Sunday from 9 a.m. to 7 p.m. The defendant shall provide the plaintiff not less than forty-eight hours notice of which evening in the week he will visit with the child.
3. The defendant shall pay child support to the plaintiff in the amount of $285 per week in accordance with the child support guidelines. The defendant shall be entitled to take the minor child as a dependency exemption.
4. So long as the plaintiff occupies the marital residence, or until July 1, 2001, the defendant shall pay to the plaintiff alimony in the amount of $625 a week. After the plaintiff vacates the marital home or after in any event July 1, 2001, the defendant shall pay alimony to the plaintiff in the amount of $575 a week until September 1, 2002, thereafter the defendant shall pay the plaintiff alimony at the rate of $525 a week until September 1, 2003, thereafter the defendant shall pay alimony to CT Page 6705 the plaintiff at the rate of $475 a week until September 1, 2004. Said alimony shall terminate upon the death of either party, the plaintiff's remarriage or September 1, 2004, whichever shall occur first. The provisions of CGS § 46b-86 (b) apply.
5. The defendant shall continue to provide health and dental insurance for the minor child as available through his employment, for so long as she is eligible to be covered as a dependent by such insurance. Uninsured and unreimbursed medical and dental expenses shall be shared by the parties in accordance with the child support guidelines.
6. The plaintiff is entitled to exclusive possession of the marital home until it is sold and she is to pay and be responsible for the reduced interest mortgage payments which become due during the period she occupies the home.
7. The marital home located at 191 River Road, Madison, Connecticut shall be listed for sale no later than July 1, 2001. The parties are to cooperate in the listing, showing, and closing of the property. Any net proceeds from the sale shall be divided equally by the parties, and any deficiency resulting from the sale shall be the responsibility of both parties.
8. The parties are to share equally in any recovery from the lawsuit they have brought to recover damages to their home from nearby blasting. If it is necessary for the parties to assign their interest in the lawsuit to prospective purchasers or to their mortgagee in order to bring about a sale of the premises, they are ordered to do so.
9. In the event recovery from the lawsuit is obtained prior to the sale of the marital residence, the proceeds of the lawsuit shall be held in escrow by counsel in this case until closing of the sale of the house. In the event the sale of the house results in a deficiency, the parties are ordered to utilize the proceeds of the lawsuit to satisfy the deficiency. If any proceeds remain after satisfaction of any deficiency they are to be divided equally between the parties.
10. The parties are ordered to cooperate, for their mutual benefit, in all aspects of the lawsuit, including, prosecution, settlement discussions, and execution of releases.
11. The court retains jurisdiction over the issues of sale of the house and disposition of the lawsuit. If either party believes the other is not acting in the mutual interest of the parties they are to seek further orders from the court. So as to inform the parties, and any future court, this court will indicate a possible course of action. If it finds CT Page 6706 one party is not acting to the mutual benefit of the parties the court would assign the real property and/or the lawsuit to the party the court concludes is acting in a manner that most benefits both parties, with direction to effectuate the court's orders pertaining to equal sharing of the equity, liability, and recovery by the parties.
12. There is an arrearage of pendente lite child support and alimony in the amount of $11,719. The defendant is ordered to pay $50 a week on said arrearage until July 1, 2001, thereafter the defendant shall pay $100.00 per week until September 1, 2002, thereafter the defendant shall pay $200.00 per week until the arrearage is paid in full. . The defendant is further ordered to pay any and all remaining balance on said arrearage from his share of any proceeds arising from the sale of the house or the disposition of the blasting lawsuit. This payment is to be made at the time he receives said proceeds.
13. The parties shall file a joint state and federal income tax return for the year 2000. Any taxes due are to be paid by the defendant husband and any refund received shall be the property of the husband.
14. The parties shall be equally responsible for payment of the MBNA for the loan in the name of the plaintiff that has a present balance of $19,123. The plaintiff is ordered not to add any additional charges to this account. The defendant is ordered to reimburse the plaintiff one half of any payment the plaintiff makes on said account within ten days of notice of said payment.
15. The defendant shall make available to the plaintiff COBRA benefits for her health insurance as available through his employment, should she desire them. The plaintiff is responsible for any premiums for said health insurance coverage.
16. The defendant is ordered to maintain the $10,000 life insurance policy presently available through his employment for the benefit of the minor child.
17. The plaintiff wife shall retain the french painting of flowers and the large chair and ottoman from the living room. The defendant shall be entitled to receive the Sony digital video camera and the upholstered chair and ottoman in the den.
Domnarski, J.